Judge Underwood
delivered the opinion of the Court.
Mrs. Frost, in 1827, as lessor of the plaintiff, instituted an action of ejectment, claiming titje under a patent to John Craig and Robert John-./-' son, assignees of Jos. Blackford* bearing date in April, 1785, against the plaintiffs in error, who were heirs of George S. Smith, and who claimed title under a patent, bearing date in February, 1801. Both grants covered the land in controversy. The tide of Mrs. Frost was regularly derived from the patentees of the elder grant. The junior patent issued in favor of Wade Moseby and James Brown. Moseby conveyed to George S. Smith, by deed bear-ingdate 18th September, 1806, stating as the reason for making the conveyance, that he supposed Lewis Craig had sold the lands to said Smith. In 1803, Lewis Craig executed a deed, purporting to convey to said Smith, 900 acres, which include the land in contest. This deed, in connection with the recognition of L. Craig’s right by Moseby j are circumstances *425 from which it may be inferred, that L. Craig Was entitled to the land before Moseby conveyed to Smith. 'James Brown, for the consideration of five in 1813, conveyed to John Craig, jr.and he,in 1823, convoyed to Smith’s heirs 300 acres, part of the tract patented to Moseby and Brown, for the consideration' of a dollar. It does not appear whether the tract granted to Moseby and Brown was ever divided between them, or those claiming under them. It was proved by the defendants, that their ancestor, G. S. Smith, occupied the land in controversy, in 1788, claiming the same as a purchaser, (but from whom, the bill of exceptions does not state,) and that he continued to reside thereon until his death, and his heirs have resided thereon ever since. That 30 acres in controversy were enclosed and cultivated by G. S. Smith and his heirs, for more than 20 years before bringing the suit, and that their possession had been uninterrupted and continued, for so we understand the evidence. Under this view of the evidence in behalf of the defendants, it is perfectly clear that the jury would have been warranted in finding for the defendants, to the extent of the 30 acres. To avoid the force of the evidence given by'the defendants, the plaintiff endeavored to prove that the entry and possession of G. S. Smith, were not adverse to the claim of the plaintiff, and with that view, interrogated the witnesses of the defendants, who stated, upon cross examination, “that they understood that said Smith had purchased of Reuben Craig, who had purchased of John Craig, who owned a part of Black-ford’s claim; that in the year 1787, Reuben Craig settled upon said land as a purchaser from John Craig, and made some improvements thereon, and then sold to said Smith.” According to one of the witnesses, Blackford’s claim, patented to John Craig and Robert Johnson, was divided in 1787, or before, by a line running through the tract, plainly marked; that the husband of Mrs. Frost purchased and settled in 1789, not far from the dividing line, and that Frost, the husband, 24 or 25 years before the trial, told Lewis Craig, who owned Moseby’s claim, and was selling it out, that he could convey up to the dividing line, but he must not cross it, as he claimed the land *426 on the other side, meaning the side on which his set* tlement was. The land now claimed by the plaintiff below is on the side of the dividing line, on which her husband did not settle, Craig and Johnson, the patentees, having crossed that line by the boundary of their deed to Simeon Frost.
if def’t. entered and held, under pl’lffs. vendee as tenant to him, his possession is not adverse.
The court, upon the foregoing facts, on the motion of the plaintiff’s counsel, instructed the jury “that if they believed Smith, or those under whom he claimed, took possession of Blackford’s claim, moaning, (we suppose, the tract patented to Craig and Johnson,) the statute of limitations furnished no de-fence,” and refused to give any instruction asked for by the counsel for the defendants.
The jury found for the plaintiff. The court rendered judgment on the verdict. The defendants moved for a new trial. The court refused it. The defendants excepted, and have prosecuted their writ of error, with supersedeas.
The instruction given on the application of the plaintiff’s counsel, is palpably erroneous. To fake it literally, it deprived the defendants of all defence, because Smith, or those under whom he claimed, entered upon the land and took possession, whether he or they entered as tenants to Blackford or not. We suppose, however, that the court intended to convey the idea, that if Smith, or those under whom he claimed, entered and was possessed under Black-ford, and held as tenant to him, then the possession was not adverse, and if that were the case, then the statute of limitations did not apply, and constitufed no defence. But even if the instruction had been modified, according to this supposition, we yet think it would have been erroneous, because there is no evidence on which it would have been legitimately predicated. The strongest evidence on the subject of the manner in which Smith entered, is the statement set out in the bill of exceptions, that some witnesses “understood that Smith purchased of Reuben Craig, who had purchased of John Craig, who owned a part of Blackford's claimbut how these witnesses derived their information, is not explained, nor is it shown that Reuben Craig ever made any contract with John Craig, verbal or written. Such statements were, in *427 our opinion, too weak to authorize the court to take it for ¡¡¡ranted, that the possession of Smith was hot adverse. It must have been upon such an assumption, that the instruction was given. It may be that the bill of exceptions sets out the evidence very imperfectly. We must take it, however, as it stands.
the prove 2q * years’ possec-monwealth-, ttmTde-fendant does n°t toldad plaintiff.168 °B
Dwelling . ¡““¿Un controvert, tn entitle ^ of 7 years» limitation aot' ^werc“ -
Depew and Daviess, for plaintiffs; Paynet for de» fendant.
We are, likewise, of opinion that the court, upon the evidence exhibited to us, should have instructed the jury, that if they believed, from the evidence, that the defendants and their ancestor, had been in possession, continually, for twenty years, claiming under the title derived from Moseby, that they were warranted in finding for the defendants. This instruction was, in substance, asked by the counsel for the defendants, and refused. We think it ought to have been given, because there is nothing appearing upon the record, which can estop them from resisting the title of the plaintiff, derived from the patent to Craig and Johnson.
We shall not notice particularly, the various in-structio'ns asked for by the defendants, because, on another trial, the facts may be varied and assume a new aspect. It is, however, proper to remark, that in order to deprive the defendants of the bar resulting from the statute of limitations of 20 years, it must be shown that their possession is not adverse to the title set up by the plaintiff.
We cannot decide on the protection which the limitation of seven years, under the act of 1809, may afford the defendants, because we do not know whether the dwelling house is on or off the land in controversy. If the dwelling be included, seven years’ continued possession under Moseby’s title, that being vested for that length of time in the defendants, will protect them against any adverse, interfering patent, unless they are estopped to deny the title of the plaintiff. No estoppel appears from any thing which the present record contains.
The judgment of the circuit court is reversed, and the cause remanded for a new trial.
The plaintiffs in error must recover their costs.